**B-W ACCEPTANCE CORPORATION, Plaintiff-Appellant,**

v.

**Sarah ALEXANDER, Defendant-Respondent.**

**No. 57729.**

Supreme Court of Missouri, En Banc.

April 11, 1973.

Rehearing Denied May 14, 1973.

Dennis G. Muller, Muller & Muller, Kansas City, for plaintiff-appellant.

Baker, Brandom, Saeger & McElligott, William S. Brandom, Kansas City, for respondent.

BARDGETT, Judge.

The issue in this case is whether a plaintiff-mortgagee in a magistrate court replevin action who obtains prejudgment possession of certain chattels pursuant to §§ 533.240 to 533.450, RSMo 1969, V.A.M.S., (Replevin in Magistrate Court) by filing a statement, affidavit and proper bond has the right to sell the repossessed chattels prior to judgment under the provisions of the chattel mortgage.

This appeal was transferred from the Missouri Court of Appeals, Kansas City District, after opinion, on motion of appellant pursuant to Mo.Const. Art. V, § 10, V.A.M.S., as amended; Rule 83.03, V.A. M.R. The court of appeals held that a plaintiff in replevin does not have the right to sell the chattels pending the replevin action trial. The court adopts portions of the opinion of the late Judge Fred L. Howard of the Missouri Court of Appeals, Kansas City District, without the use of quotations.

This suit in replevin was commenced in magistrate court by appellant as the assignee of an installment purchase contract and a chattel mortgage securing the payment thereof. Respondent purchased

household goods in the total amount of $1,060.70. A down payment of $50 was made and time service charges in the amount of $403.02 were added, making a gross price of $1,413.72, payable in 35 monthly installments of $39.50 and the 36th installment for the balance in the amount of $31.22. This contract provided for interest from maturity only. Respondent defaulted on the last four installments payable on the last day of the months of September, October, November and December, 1962. The total default amounts to $149.-72, which was all overdue on January 1, 1963. On March 13, 1963, respondent paid $39.50, being the amount of one monthly payment. This reduced the amount owing and in default to $110.22, exclusive of interest accruing since maturity. The day after this payment, March 14, 1963, this suit was filed in magistrate court. The statement and affidavit in replevin alleged that the value of the goods was $325 and demanded damages in the amount of $32.50 for the taking and detention of the property and for injury thereto. It alleged an unpaid balance in the amount of $149.72 (this was the amount in default prior to the $39.50 payment made March 13). Appellant made the appropriate bond and the replevin writ was issued on March 14 and was executed and the property delivered to appellant on March 15. The writ was returnable April 3, 1963. On March 16, the day after the execution of the writ, appellant sold the property "for the net proceeds of $130.00" at a private sale to "Gabriel Auction, Kansas City, Missouri."

On the day prior to the return date of the writ, respondent tendered into the magistrate court payment in the amount of $149.72 as the balance due on the debt, and $41.50 for costs, interest and reasonable expenses. After various continuances, the magistrate court entered judgment for the defendant for possession and for the plaintiff for $110.23, plus costs, that being the amount of the debt in default at the time of the judgment. Appellant appealed to the circuit court. The amended transcript

from the magistrate court contains an undated entry appearing immediately after the entry of March 14, 1963, which reads: "Received of John Cochran, attorney, $191.22." The last entry in this transcript under date of July 31, 1963, is: "Amended transcript and check for $191.22 sent to Circuit Court."

Trial was had to the circuit court sitting without a jury. This consisted of an agreed statement of facts dictated into the record by the attorneys for the respective parties. The court took the case under advisement and later entered its judgment as follows:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that defendant have judgment against plaintiff and Travelers Indemnity Company, the surety in the Replevin Bond filed by plaintiff herein; that plaintiff return said property taken to defendant, or in case defendant so elects, that defendant have and recover of plaintiff and said Travelers Indemnity Company, the said surety, the value of said property so assessed, the sum of $325.00 and have execution therefor, together with defendant's costs and charges in this behalf expended, and that defendant have execution therefor against plaintiff and said surety."

The court also filed a memorandum of findings of fact and conclusions of law, wherein the trial court concluded that it was not necessary to determine whether or not appellant had a right to sell the property prior to the return date of the writ. The court ruled that the acceptance of the payment on March 13, 1963, amounted to a waiver of default and that, therefore, the appellant was not entitled to judgment in replevin because the default had been waived and it was not entitled to possession under the provisions of the mortgage at the time suit was filed. The trial court cites as authority for this ruling the case of Lange v. Midwest Motor Securities Co., 231 S.W. 272 (Mo.App.1921). That case is

in fact authority only for the proposition that the acceptance of one payment merely waives the default as to that particular payment and does not waive the default as to other unpaid payments. Thus, under the authority of this case, there was no waiver of the default in the payments due on the last day of the months of October, November and December, in the total amount of $110.22.

The trial court also concluded that the tender by respondent of the full amount due prior to the return date of the writ constituted a complete compliance by respondent with her obligation under the chattel mortgage and that respondent was therefore entitled to judgment of possession. The court further ruled that since the default had been waived the appellant could not invoke the acceleration clause in the mortgage and consequently was not entitled to a money judgment. This last conclusion misconceives the facts because appellant had not invoked the acceleration clause and the $110.22 balance was in default absolutely and without aid of the acceleration clause.

Plaintiff proceeded in this magistrate court replevin action pursuant to § 533.240 et seq., RSMo 1969, V.A.M.S. Under § 533.260 the action can be maintained without obtaining possession of the chattels prior to judgment. Where a plaintiff seeks to obtain prejudgment possession of property in a magistrate replevin action, he must proceed in accordance with § 533.260, subd. 1(6), which provides:

"(6) If the plaintiff claim the possession of the property before judgment, he shall also state that *he will be in danger of losing his said property*, unless it be taken out of the possession of the defendant." (emphasis ours)

Other provisions of chapter 533 permit the defendant, in a magistrate court replevin action, to retain possession pending judgment upon posting an appropriate bond.

The plaintiff's right to obtain possession prior to judgment is premised upon plaintiff's claim that the property will be lost unless plaintiff is put in possession of it.

The provision of § 533.270, which pertains to the undertaking by plaintiff when prejudgment possession is sought, provides in part that, "if the property be delivered to him [plaintiff], he will return it to the defendant, if return thereof be adjudged, . . . ." and the like provision of the bond itself is set forth in § 533.280. Sec. 533.-310 pertains to the execution of the writ of replevin and the defendant's right to retain possession upon the giving of bond and provides in part, "If the defendant require it, the officer shall hold the property forty-eight hours to enable him to furnish said bond, and if the same be not furnished in that time the officer shall deliver the property to the plaintiff, who shall have the right to retain the same to abide the event of the suit."

It is appellant's basic contention that since respondent was in default at the time the suit was filed and prejudgment possession was obtained the court should have entered judgment for possession in favor of appellant. This contention is premised on the concept that the replevin action adjudicates the right to possession as of the date the suit was filed and that there is nothing that can take place between the filing of the suit and judgment that can reinvest the defendant with the right to possession.

Appellant, as holder of a mortgage in default, has only a special interest in the property while the respondent is the general owner thereof. See Baldridge v. Dawson, 39 Mo.App. 527 (1890), and Brandtjen & Kluge, Inc. v. Hunter, 235 Mo.App. 909, 145 S.W.2d 1009 (1940). Under its mortgage, appellant is entitled to the money owing to it plus interest thereon and costs of suit. This special interest was recognized by appellant in the "Statement and Affidavit" in replevin filed in this case. In that statement, appellant asserted

that it was entitled to possession of the chattels then held by respondent "under purchase money chattel mortgage executed by Sarah Alexander and now held by plaintiff of the value of Three Hundred Twenty Five and 00/100 DOLLARS, *or until the balance of $149.72, interest and expenses of replevin suit are paid,* . . ." (emphasis supplied.)

■ Where, as here, the respondent is the general owner of the chattels and the appellant has a special interest, the respondent has the right to redeem the property prior to foreclosure. This is demonstrated by the provision of § 443.290 which provides that a sale under a power of sale contained in the mortgage or security agreement forever forecloses all right and equity of redemption in the property sold. 59 C.J.S. Mortgages § 482 (1949) states that foreclosure "denotes, not the beginning, but the end, of a procedure adopted by the mortgagee to bar perpetually the rights of the mortgagor, and includes the sale itself of the mortgaged property, rather than the steps preliminary to the sale."

■ If plaintiff had filed its replevin suit alleging the right to possession while defendant was in default, and if the chattels had remained in possession of defendant by plaintiff's failure to seek prejudgment possession or under defendant's forthcoming bond, and if, prior to judgment, the defendant fully satisfied plaintiff's special interest, then the satisfaction of plaintiff's special interest would have reinvested defendant with the right to possession of the chattels and, should the suit nevertheless proceed to judgment, defendant would be entitled to a judgment for possession.

■ The same is true where plaintiff obtains prejudgment possession in replevin and, before the chattels are sold under the chattel mortgage (foreclosure), the defendant satisfies plaintiff's special interest by paying the amount due together with interest, costs, and other sums plaintiff is entitled to as expenses of the prejudgment possession.

■ Consequently it is seen that the right to a judgment for possession is not in all events permanently fixed as of the date the suit is filed and that defendant can take certain steps so as to obtain the right to possession where that right is in plaintiff at the time suit is filed. Basically, the defendant does have a right to redeem after default and before foreclosure. The existence of this right is recognized by § 443.290, RSMo 1969, V.A.M.S.

Experience indicates that the replevin action and prejudgment possession of the chattels has been the legal procedure utilized by mortgagees over a period of many years to obtain the peaceful possession of mortgaged property upon default by the mortgagor, and that mortgagees have thereafter sold the property (foreclosed) under the resale rights contained in the mortgage prior to judgment.

Nevertheless, the plaintiff's statement in replevin, when prejudgment possession is sought because plaintiff will be in danger of losing the property unless it be taken out of the possession of defendant, and the terms of the bond, to the effect that plaintiff will return the property to defendant if return thereof be adjudged, are reasonably calculated to lead the defendant to believe that plaintiff will not exercise his resale rights under the mortgage prior to judgment and, therefore, a defendant is led to the belief that he can redeem the property prior to judgment.

Respondent principally relies on Mohr v. Langan, 162 Mo. 474, 63 S.W. 409 (1901), for the proposition that a plaintiff in replevin who secures prejudgment possession of chattels cannot exercise foreclosure rights under a mortgage prior to judgment. However, in Mohr v. Langan, the factual situation was that after plaintiff obtained prejudgment possession in replevin by posting the necessary bond the replevin suit was tried and judgment was in favor of

the defendant, on March 4, 1895. At that time the goods were still intact and in possession of plaintiff. On March 26, 1895, after the judgment for defendant was entered, the plaintiff caused the chattels to be sold. It was in this context that the court held that a plaintiff in replevin who secures the prejudgment possession by affidavit and bond must retain the chattels.

Appellant relies on Donohoe v. McAleer, 37 Mo. 312 (1866), for the general proposition that when a party who is entitled to the possession of personal property secures that possession by replevin writ and bond he has a right to exercise all acts of ownership over the property, including its sale and transfer. The court in Mohr v. Langan, supra, 63 S.W. loc. cit. 413, held that, "The rule laid down in Donohoe v. McAleer, 37 Mo. 312, that [a] party in possession under a writ of replevin may sell the property and pass good title, being liable only on his bond for the assessed value, is therefore no longer the law in this state, and should no longer be followed."

■ The general statement enunciated in Donohoe v. McAleer was properly disapproved in Mohr v. Langan as it cannot be said to be the law in all situations for it fails to take into account that, where a plaintiff in replevin seeks prejudgment possession as a mortgagee, the plaintiff has only a special interest in the chattel and is not the general owner.

■ The replevin statutes (chapter 533, RSMo 1969, V.A.M.S.) provide the legal process whereby a person claiming possession of chattels can avail himself of state assistance to secure that possession. The basis for a plaintiff's claim to possession will vary from case to case as the replevin statutes were not drawn only to meet the needs of a mortgagee nor were they drawn to only meet the needs of one whose property is in the possession of another because of circumstances other than the existence of a mortgage or security agreement. In short, replevin is a legal procedure available for the enforcement of rights but it

does not confer rights that do not otherwise exist.

One solution to the conflict noted above between the foreclosure rights of the mortgagee as set forth in the mortgage and the undertaking by a plaintiff to obtain prejudgment possession by a suit in replevin would be to adopt the general proposition of Mohr v. Langan, supra, and hold that wherever state action by way of a replevin suit is utilized to obtain prejudgment possession a plaintiff could never foreclose under the terms of the mortgage prior to final judgment in his favor. This, however, would tend to encourage mortgagees to use self-help in obtaining possession of mortgaged property and not to utilize the orderly processes of law, and this surely was not intended by the legislature, nor is it conducive to an orderly and peaceful society. Another solution would be to adopt the proposition set forth in Donohoe v. McAleer, supra, but this ignores the fact that the mortgagee has only a special interest in the property and allows him to deal with the property as if he were the so-called "true owner" or general owner, and further ignores the provisions of the replevin statute and bond and the rights of the mortgagor (general owner) to redeem the property prior to foreclosure.

The apparent conflict between the foreclosure or resale rights of a mortgagee under the mortgage or security agreement and the undertakings required of a mortgagee when he seeks prejudgment possession by way of replevin suit and bond can be resolved in another way and would substantially protect the relative rights of the parties.

■ Since it is the provision of the replevin statute and prejudgment possession bond that reasonably lead a defendant into a false sense of security, that false sense of security can be corrected if a plaintiff who obtains prejudgment possession in replevin and who thereafter decides to exercise his foreclosure rights under the mortgage prior to judgment is required to give

reasonable notice to the defendant of plaintiff's intent to sell the property—foreclose —under the mortgage.

This would disabuse the mortgagor of any belief that the mortgagee was not going to exercise resale rights under the mortgage prior to judgment and would allow the mortgagor to exercise his right of redemption. What constitutes reasonable notice is somewhat arbitrary; but rather than leave the matter indefinite the court holds that the notice of intent to exercise claimed resale rights prior to judgment where the mortgagee has obtained prejudgment possession in replevin must be given to the mortgagor fifteen days prior to the sale. The sale is, of course, at the risk of the mortgagee; that is to say the notice does not give the mortgagee any rights he did not have under the mortgage nor does it convert what may have been an unlawful prejudgment possession in replevin into a lawful one. The notice simply functions to clear up any misunderstanding on the part of the defendant which resulted from the provisions of the replevin statute and the terms of the prejudgment possession bond.

If the plaintiff-mortgagee does not give the mortgagor the notice set forth above, then the mortgagee cannot exercise his rights of resale under the mortgage prior to judgment and must retain the chattels until judgment be entered in accordance with the provisions of the replevin bond.

In the instant case the appellant (plaintiff-mortgagee) obtained prejudgment possession by replevin writ and bond on March 15 and sold the property the next day, March 16, without any notice to respondent (defendant-mortgagor). Respondent satisfied the appellant's special interest during the time respondent had a right to believe the chattels were still in the hands of the appellant. In so doing respondent exercised her right of redemption and thereupon had the right to the possession of the chattels. Appellant could not deliver possession because it had sold the chattels contrary to the provisions of the replevin statute and the terms of the bond and without notifying the mortgagor of its intent to exercise foreclosure rights (resale) under the mortgage. However, the fact that appellant, in violation of its undertaking necessary to obtain prejudgment possession, rendered itself incapable of redelivery of the chattels to respondent does not preclude respondent from obtaining a judgment to which she is otherwise entitled —a judgment for possession.

Missouri courts have long held that proceedings in replevin are flexible enough to adjust the rights of both parties as of the time of trial where the contest is between a general owner of the property and one who has only a special ownership or interest therein, such as a lienholder. The judgment should be such as to give to each party his just rights. This was the holding in the early case of Dilworth v. McKelvy, 30 Mo. 149 (1860), which has been repeatedly followed under many and varied circumstances. See Boutell v. Warne, 62 Mo. 350 (1876); Lewis v. Mason, 94 Mo. 551, 5 S.W. 911 (1887); Dodd, Brown & Co. v. Wilson, 26 Mo.App. 462 (1887); Baldridge v. Dawson, 39 Mo.App. 527 (1890); Gentry v. Templeton, 47 Mo. App. 55 (1891); Dillard v. McClure, 64 Mo.App. 488 (1896); Smith v. Tucker, 200 S.W. 707 (Mo.App.1918); McWherter v. Randall, 207 Mo.App. 465, 232 S.W. 1070 (1921); Zahner Mfg. Co. v. Harnish, 227 Mo.App. 287, 51 S.W.2d 145 (1932); Sanders v. Brooks, 239 Mo.App. 578, 194 S.W.2d 540 (1946); and 46 Am.Jur. Replevin § 116 (1943).

Respondent, having satisfied the special interest of appellant prior to the judgment in replevin and during the time appellant was required to have the chattels in its possession, was entitled to a judgment for possession or, in the alternative, for the value of the chattels in question. Appellant contends there is no evidence of the value of the chattels taken by appellant pursuant to the writ and bond prior to judgment. This is correct. The affidavit in

replevin alleged the value of all of the chattels listed to be $325. The affidavit is necessary and functions, in part, to fix the amount of the bond but is not conclusive as to the value of the property seized.

 It appears from the record that when the replevin writ was executed the officer did not find and the appellant did not receive possession of one step-table, one coffee table, two lamps, one or more vanity lamps, and a seven-piece dinette set, all of which were covered by the mortgage and included in the affidavit in replevin. Consequently the property for which judgment was rendered is materially different from the property which was valued by appellant at $325. The property to which respondent is entitled to possession may be of a value higher or lower than $325. There is, in fact, no evidence of the value of the property for which judgment was given and for this reason the judgment must be reversed the cause remanded.

In addition the judgment of the trial court does not mention the check for $191.-22 which was transmitted by the magistrate to the circuit court. This apparently remains undisposed of in the custody of the clerk and should be disposed of by the trial court on remand. This is the money tendered by respondent into court in satisfaction of appellant's special interest. Appellant is entitled to judgment for the principal amount of the debt due under the mortgage plus interest to the date the money was paid into court and costs, and this judgment should be paid out of the proceeds of the check now in the custody of the court and any balance over what is due appellant should be returned to respondent.

The judgment of the circuit court is reversed and the cause remanded for a new trial on the issue of the value of the property seized by appellant and to which respondent is entitled to possession and for

entry of a final judgment consistent with this opinion.[1]

Reversed and remanded.

DONNELLY and HOLMAN, JJ., concur.

HENLEY, J., concurs in result in separate concurring opinion filed.

FINCH, C. J., and SEILER and MORGAN, JJ., concur in result and concur in separate concurring opinion of HENLEY, J.

HENLEY, Judge (concurring).

I concur in the result reached by the principal opinion, that is, that the case be remanded (1) for a finding disposing of the funds deposited in the registry of the court by defendant in satisfaction of her purchase money note and mortgage; (2) for a trial and determination of the value of the property at the time it was replevined, and damages, if any, for its withholding; and (3) judgment in accordance with the findings on (1) and (2).

However, I do not agree that a mortgagee in possession of chattels by replevin may not exercise sale rights provided for in its contract with the mortgagor and must retain the chattels until final judgment in replevin, unless the mortgagee first gives the mortgagor fifteen days notice of its intention to exercise those rights. Nor do I believe that it is necessary that the court so hold, or that it is necessary that our statutes be amended to meet the situation presented in this case, because I have the view that Chapter 533, RSMo 1969, V.A.M.S., is intended to, and does, provide for every contingency liable to arise between the parties in a replevin action.

In my view the result reached by the principal opinion demonstrates clearly that

1. The impact of Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) upon the replevin statutes of Missouri need not be considered in view of the disposition being made of this appeal.

our replevin statutes meet the situation presented here. For example, § 533.430 provides that where the property has been delivered to the plaintiff and the judgment shall be for the defendant, as here, "[t]he judgment * * * shall be against the plaintiff and his sureties for the return of property taken, or that they pay the value so assessed, in the discretion of the defendant, or the value of the possession of the same, *in case a return cannot be had,* * * * and for the damages assessed and costs of suit. * * *" (Emphasis supplied.) This section further provides that the defendant shall not be required to make his election between return of the property and its assessed value until it is delivered to the officer and defendant has notice thereof. But the next section, § 533.440, recognizes and anticipates that plaintiff may not have the property to produce or deliver and provides what shall occur in that event. It provides that "[i]f such property shall not be produced and delivered to the officer [as required by § 533.430] within ten days after execution issued, the defendant may cause the assessed value thereof, and the damages and costs, to be levied of the property of the plaintiff's sureties." In my judgment, the principal opinion, aside from its holding with which I have disagreed, does no more or less than require the trial court and the parties to comply with these two sections of the statutes.

I do not want to be understood as saying that I would hold that the party in possession of replevined property may sell or may not sell it before final judgment. I would not hold either way, believing that it

is unnecessary that we do so. There may be situations where the only practical and reasonable answer is that he must sell it immediately.[1] But if he does, he may not do so with impunity or furnish good title to his vendee, should he not prevail in replevin. In addition to the remedies afforded him by the statutes, " * * * the winning party may still follow the property, if it can be found, and recover it, notwithstanding he has received its assessed value * * *." Mohr v. Langan, 162 Mo. 474, 63 S.W. 409, 413 (1901). He is also liable to the winning party as for conversion of the chattels. Mohr v. Langan, supra; Auffenberg v. Hafley, 457 S.W.2d 929, 937 (Mo.App.1970).

Furthermore, to hold that the mortgagee may not sell the property without notice to the mortgagor flies in the face of the provisions of the mortgage involved in this suit, that in case of default the mortgagee may " * * * *without notice* * * * take [the property] * * * and may resell the same at public or private sale." (Emphasis supplied.) It is common knowledge that this or a similar provision is in most instruments securing the unpaid balance of the purchase price of chattels we now deem necessary to our comfort. I do not know what impact our decision today would have on the sale of this type of commercial paper in this state, but I suspect it could, temporarily at least, bring it to a screeching halt. Aside from these misgivings, I have stronger misgivings about whether we may, or should, thus meddle with the contractual rights and obligations of the parties.

1. For example: (1) He could not be expected to hold in the summer very long a truckload of cabbages. (2) He could not be expected to hold chattels the market value of which was reasonably expected to take a drastic drop.