Ervin A. HAAS, Appellant,

v.

Albert P. HAAS et al., Respondents.

No. 57665.

Supreme Court of Missouri,
Division No. 1.

Dec. 10, 1973.

Motion for Rehearing or to Transfer to Court en Banc Denied Jan. 14, 1974.

Ramon J. Morganstern, M. Harvey Pines, Schramm & Morganstern, Clayton, for appellant.

Martin M. Lipsitz, Friedman & Fredericks, Clayton, for respondents.

HIGGINS, Commissioner.

Appeal from dismissal of plaintiff's petition to contest will asserting denial of due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and the presence of questions involving construction of the Constitutions of the United States and of Missouri.

Ervin Frank Haas died testate April 22, 1970, survived by his son, plaintiff Ervin A. Haas, his brother, Albert P. Haas, and his sisters, Ann Martin, Emmie Schrempp, Erma Good, and Augusta Wolf.

On May 1, 1970, a writing purporting to be the last will and testament of Ervin Frank Haas, deceased, naming defendants Albert P. Haas and Melvin Friedman coexecutors, bequeathing $1.00 to plaintiff, stating plaintiff was not testator's son, and distributing the balance of decedent's estate to some thirty-two other beneficiaries, including defendant Shriners' Hospital for Crippled Children, was admitted to probate in the Probate Court of St. Louis County, Missouri.

Schedule B of the Application for Letters Testamentary filed May 1, 1970, by the coexecutors named the beneficiaries, including "Ervin A. Haas, son of decedent [sic] former wife, now deceased, address unknown. Last known confined to Federal Prison."

Letters Testamentary were issued to the coexecutors May 1, 1970; the first publication of notice to creditors was on May 6, 1970; and the proof of publication of the notice was filed May 27, 1970. A stamped unmailed post card addressed to Ervin A. Haas, "address unknown," in the form of the notice of issuance of letters testamentary, was in the probate file.

On October 5, 1971, plaintiff filed his petition to contest the will of Ervin Frank Haas, deceased. Among other things, plaintiff alleged he "was not given proper notice that an estate had been opened for his father"; that coexecutor Albert P. Haas "knew that plaintiff was in Leavenworth penitentiary in Kansas"; and "that plaintiff was entitled to notice reasonably calculated to apprise him of the pendency of the Probate proceeding."

Upon these facts and circumstances defendant Shriners' Hospital moved for dismissal of plaintiff's petition on the ground that Section 473.083, RSMo 1969, V.A.M.S., precluded him from filing his will contest more than six months following probate of the will or six months following first publication of notice of letters testamentary, whichever is later. Defendant coexecutors also moved for dismissal of plaintiff's petition asserting their lack of exact knowledge of plaintiff's whereabouts at the time of decedent's death, sufficiency of the notice in accordance with Section 473.017, RSMo 1969, V.A.M.S., and on the ground the suit was barred by Section 473.083, supra, for the reason that it was filed more than six months after first publication of notice of letters testamentary.

After hearing, including evidence, arguments, and briefs, the court sustained the coexecutors' motion to dismiss, ordered plaintiff's petition dismissed with prejudice, and designated the order of dismissal a final order for purpose of appeal.

Appellant contends the court erred "for the reason that the notice to appellant that an estate had been opened for Ervin Frank Haas * * * pursuant to Sections 473.-017 and 473.033, RSMo (1959), was inadequate and insufficient and denied appellant due process of law and therefore the special statute of limitations in Section 473.-083, RSMo (1959), should not have run against him."

The question thus posed is whether the coexecutors' failure to more adequately advise the probate court of plaintiff's whereabouts in their application for letters testamentary under Section 473.017, if so, or the failure of the notice of letters under Section 473.033 to reach plaintiff, if so, tolled the limitation of time in which to contest a will provided in Section 473.083.

Appellant, relying principally upon Mullane v. Central Hanover Trust Company, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), dealing with quality of notice as a requisite of due process, argues "that absent a requirement for due diligence on the part of the applicant for Letters Testamentary or of the Probate Clerk to ascertain the whereabouts of the heirs and legatees that these statutes [Sections 473.017 and 473.033] are unconstitutional for their failure to require a good faith attempt to give an heir or legatee the notice to which he is entitled under the fifth and fourteenth amendments to the United States Constitution."

The difficulty in appellant's position is that Sections 473.017 and 473.033 are not relevant to the court's action and the issue of this appeal. As recognized by appellant, Section 473.083, unattacked by appellant, "is the statute that sets forth will contest procedures. It is this statute upon which the court relied in dismissing Appellant's petition."

Section 473.083, as applicable to plaintiff, provides: "If any person interested in the probate of a will appears within six months after the date of the probate or rejection thereof, or within six months after the first publication of notice of the granting of letters on the estate of the testator, whichever is later, and, by petition to the circuit court of the county, contests the validity of the will * * *, an issue shall be made up whether the writing produced is the will of the testator * * *. If no person appears within the time aforesaid, then probate or rejection of the will is binding. Whenever it is shown or appears to and is found by the probate court that any person interested in the probate of a will is a minor or person of unsound mind, and that the filing of a contest may be to the interest of the minor or person, the court shall appoint a guardian for the minor or person, who shall file or join in the contest within the time fixed by this section."

As acknowledged by appellant, Section 473.083 is not a statute of limitations in the usual sense but is a special statute of limitations applicable solely to the contest of wills. It is exclusive of the other Statute of Limitations under Section 516.300, RSMo 1969, V.A.M.S., and fraud does not toll the running of the time limit prescribed in Section 473.083 under Section 516.280, RSMo 1969, V.A.M.S., of the General Statutes of Limitations. Section 473.-083 is more in the nature of a statute granting jurisdiction than that of a statute of limitations. The right of action to contest a will is purely statutory in that Section 473.083 confers jurisdiction upon the circuit court in derogation of common law, and grants to the persons there named a personal right to contest probate of a will provided the party invokes such jurisdiction within six months after the later of the dates of probate or of first publication of notice of letters. Miller v. Munzer, 251 S.W.2d 966, 971 [7, 8] (Mo.App.1952); State ex rel. Bier v. Bigger, 352 Mo. 502, 178 S.W.2d 347, 350 [3, 4] (Banc 1944).

Black v. City National Bank and Trust Company, 321 S.W.2d 477 (Mo.1959), applied the foregoing in affirming dismissal of a will contest in similar circumstances. Plaintiff was a prisoner in Texas and brought suit to contest his uncle's will. The suit was filed after the time provided by the applicable statutes, Sections 468.580 and 468.600, RSMo 1949, V.A.M.S. c. 475 Appendix. The court treated the statutory period as a special statute of limitations "within the precise terms of Section 516.-300 RSMo 1949, V.A.M.S., which specifically excludes from the operation of the general statutes of limitation any action which is 'otherwise limited by any statute * * *.' The result of this is that the tolling provisions and exceptions contained in the general statutes of limitation are inapplicable. * * * A special statute of limitation must carry its own exceptions and the courts cannot engraft others upon it. * * * Here the only exceptions contained in the special statute of limitations

are as to infants and persons of unsound mind. There is no exception, specifically or by inference, to persons who are imprisoned * * *." 321 S.W.2d 1. c. 480 [4–7].

There is no question that plaintiff failed to file his contest within the time prescribed by Section 473.083, and his failure does not come within any exception provided in such special statute of limitations. Accordingly, the trial court properly dismissed plaintiff's will contest on account of his failure to bring it within the time prescribed.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

BARDGETT, P. J., and HOLMAN, J., concur.

SEILER, J., concurs in result in separate concurring opinion filed.

SEILER, Judge (concurring).

As I understand appellant's claim he contends the statutes under which the probate proceedings were commenced violate due process and are unconstitutional because they do not require executors to exercise due diligence in notifying heirs, legatees and devisees, but are satisfied with only an indifferent effort on the part of the executors. Here, for instance, although the executors presumably could easily have obtained appellant's exact address, they did no more than to say he was in federal prison and gave him notice only by publication. Appellant thus is contending that the procedure followed was insufficient even to confer jurisdiction on the probate court to open the estate and, of course, if appellant is correct in this, the mere passage of six months of time would not serve to cut off his rights despite Sec. 473.083, RSMo 1969, V.A.M.S., as it does not begin to operate until an estate has been validly opened. So I believe we necessarily must address ourselves to the question of whether Secs. 473.017 and 473.033, RSMo 1969, V.A.M.S., violate due process as to notice.

The fourteenth amendment of the U.S. Constitution provides that a person may not be deprived of life, liberty or property without due process of law. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . The notice must be of such nature as reasonable to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance . . . ." Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L.Ed. 865 (1949).

Missouri cases agree that due process sometimes requires more notice than is required by a statute. See State ex rel. Deems v. Holtcamp, 245 Mo. 655, 151 S.W. 153 (1912); Clapper v. Chandler, 406 S. W.2d 114 (Mo.App.1966). And see Maus, Missouri Practice, Probate Law and Practice, Vol. 3, Sec. 514.

Appellant's argument that due diligence in giving notice is essential to due process is the gist of the Mullane decision and would logically seem applicable to probate proceedings. A due diligence requirement would not put a heavy burden on executors nor would it thwart the state's interest in the final settlement of estates, but it would further protect the rights of persons with an interest affected by probate of the will. In this case, for example, it would have required no more than an inquiry by the probate judge as to what efforts the executor had made to locate appellant's address. If

no effort had been made the court could direct the executor to make reasonable efforts to determine appellant's whereabouts. On the other hand, were the probate court satisfied that due diligence had been complied with, it could proceed.

However, courts of other states have not applied the due process language of Mullane to the notice requirements of probate proceedings. In addition other decisions of the Supreme Court give support to the validity of the notice requirements of our probate code. The court has held that an ex parte probate followed by a one-year period for contest affords due process of law. Farrell v. O'Brien, 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101 (1905). And the Supreme Court has construed the due process provisions of the fourteenth amendment not to overturn aged practices. See Ownbey v. Morgan, et al., Executors of Morgan, 256 U.S. 94, 110, 41 S.Ct. 433, 65 L.Ed. 837 (1921), [although doubt may be cast on this by some of the language in Fuentes v. Shevin, 407 U.S. 67, 91–92, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)] and cases cited in "Probate Proceedings—Administration of Decedent's Estates—The Mullane Case and Due Process of Law", 50 Mich.L.Rev. 124 (1952). It is for this reason I concur in the result of the opinion written by Higgins, C.

It should be noted, however, that the concept of due process has changed considerably since 1905 and courts today do not look with favor on ex parte proceedings which affect property rights. See. e. g., Fuentes v. Shevin, supra: B–W Acceptance Corporation v. Alexander, 494 S.W.2d 75 (Mo. banc 1973); and State ex rel. Williams v. Berrey, 492 S.W.2d 731 (Mo. banc 1973). The subject of whether our probate statutes should be amended to require executors to exercise due diligence in giving notice would seem, therefore, to be deserving of legislative attention. Even in the absence of more precise statutory requirements, careful executors will no doubt take pains to exercise due diligence in giv-

ing notice to interested parties. See annot. Duty and Liability of Executor with Respect to Locating and Noticing Legatees, Devisees, or Heirs, 10 A.L.R.3d 547.