THOMAS B. BASH, Sheriff of Jackson County, v. HARRY S. TRUMAN, EUGENE I. PURCELL and BATTLE McCARDLE, Judges of the County Court of Jackson County, Appellants.—75 S. W. (2d) 840.

Court en Banc, October 13, 1934.*

*NOTE:. Opinion filed at May Term, 1934, July 17, 1934; motion for rehearing filed; motion overruled at September Term, October 13, 1934.

*Fred A. Boxley, Rufus Burrus, Leo B. Parker* and *Elmer B. Hodges* for appellants.

*Jacobs & Henderson, M. J. Henderson, Thos. E. Deacy* and *Lee D. Seelig* for respondent.

*John C. Meredith, amicus curiae.*

HAYS, J.—In the circuit court the respondent obtained a peremptory writ of prohibition, debarring the appellants as the members of the County Court of Jackson County from putting into operation certain provisions of the county budget law, found in Laws 1933, at pages 340 to 351. Final judgment was rendered on demurrer and the case is here on defendants' appeal.

The parties have treated the issues as joined upon the petition for the preliminary writ and the demurrer of the defendants filed thereto, and we shall do likewise.

Sections 9 to 22 of the county budget law apply to Jackson County and all other counties in the State having a population of more than fifty thousand inhabitants. The following outline of the salient provisions of the questioned sections will, we think, be sufficient for our consideration of the case:

(Section 9) The presiding judge of the county court shall be the budget officer of the county, or the county court may designate the county clerk as budget officer.

(Section 10) The annual budget of any such county shall present a complete financial plan for the ensuing budget year. It shall set forth all proposed expenditures for the administration, operation and maintenance of all offices, departments, commissions, courts and institutions; the actual or estimated operating deficits or surpluses of prior years; and in detail the anticipated income and other means of financing the proposed expenditures, etc.

(Section 11) This section places certain duties on various officers, agents and employees in the collection of information and in the enforcement of the act. It also provides that the budget officer, after reviewing the estimates of the needs of the various operating

agencies as reported·by· them, and the probable income for the year, shall prepare a budget document and transmit it to the county court. The section also provides that "the budget officer shall have power to recommend and the *county court shall have power to· fix all salaries of employees, other than those of elective officers,* except that no salary for any position shall be fixed at a·rate above that fixed by law for such position." (Italics ours.)

(Section 12) This section relates to the budget document and designates what the document shall contain. Among ·other matters it shall contain an "appropriation order" which shall be drawn ,in a form to authorize an appropriation for expenditures.

(Section 13) This section provides that the county court shall hold a public hearing on the document before taking final action thereon.

(Section 14) Authorizes the county court, after such public hearing, to "revise, alter, increase or decrease the items contained ,in the budget and may eliminate any item or add new items," and requires the court to make provision for the necessary income to balance expenditures. And at the time of making the appropriation order the court shall tentatively fix the tax rate ·necessary to finance and balance the budget, and shall fix the final tax rate after final action by the State Board of Equalization on the assessment made by the county assessor.

Respondent's petition charges that the appellants in their capacity as judges of the county court are attempting to enforce and put into operation this county budget law. Next, the petition undertakes to outline the provisions of the sections assailed, and then proceeds to state respondent's special grievance, which is, in substance: The appellants are threatening to adopt a budget wherein—(1) they are fixing a tentative tax rate for the year 1934; (2) they are attempting to dictate the expenditures of respondent for said year in the performance of the duties of his office as sheriff; (3) they seek to limit the number of respondent's deputies; and (4) seek to fix the salary, or compensation, to be paid his deputies. The petition then alleges that said threatened acts are in violation of various provisions of the State Constitution, which provisions and the subject matter thereof are properly designated in the pleading.

Although the demurrer specified several grounds, only one of them is urged in this court, namely, "that the petition does not state facts sufficient to constitute a cause of action against the defendants for the relief prayed." However, another stated ground of the demurrer reads: "That the court has no jurisdiction of the subject of the action." Appellants also, in· their motion in arrest of judgment, charge that upon the record said judgment is erroneous.

It is the law that where ·judicial· tribunals have no jurisdiction of the subject-matter on which they assume to act, their pro-

ceedings are absolutely void. [7 R. C. L., p. 1042, sec. 75.] And it is a maxim of the law of procedure that litigants cannot by consent confer jurisdiction of the subject matter. It is essential to orderly procedure that the legal remedies which the law provides be confined each to its rightful province. This court is, therefore, in duty bound, before considering the constitutional, and only, questions of law raised, to determine this question of jurisdiction which, upon an examination of the record, obtrudes itself on our notice. This duty we undertake·in the light of Section 36 of Article 6 of the Constitution. It provides: "In each county there shall be a county court, which shall be a court of record, and shall have jurisdiction to transact all county and such other business as may be prescribed by law," etc.

■ We start then, from these two postulates: The county court is a constitutional body with judicial powers; the circuit court, being a constitutional court of general jurisdiction, unquestionably has general jurisdiction of proceedings in prohibition. But the question of the lower court's particular jurisdiction, or power to hear and decide the instant proceeding, is dependent wholly upon whether the county court was exercising a judicial function in the premises. This in turn is to be determined upon the nature of the acts sought to be restrained.

"These bodies (county courts), while recognized in designating them in the Constitution and the statutes as courts, possess few of the attributes of judicial tribunals. Their functions and powers are generally administrative and their appellation as courts is technically a misnomer. They are in the nature of commissioners or supervisors of the affairs of counties. Thus constituted, their appellation, or the fact that in certain instances they may act judicially, affords no reason for their supervision by prohibition. Such control when exercised over them by a superior court must find for its sufficient reason an attempted usurpation of judicial power, the prevention of which is the peculiar province of prohibition." [State ex rel. Guaranty Co.· v. Harty, 276 Mo. 583, 1. c. 596, 208 S. W. 835.]

It is a well-settled rule that prohibition will not lie to control administrative or ministerial functions, discretionary actions, or legislative powers. [High on Ex. Legal Rem. (3 Ed.), sec. 782; State ex rel. v. Clark County Court, 41 Mo. 44; State ex rel. v. Bright, 224 Mo. 514, 123 S. W. 1057; State ex rel. v. Goodier, 195 Mo. 551, 93 S. W. 928; Kalbfell v. Wood, 193 Mo. 675, 92 S. W. 230.]

■ Looking now to the nature of the acts complained of: It is plain that the fixing of a tax rate, tentatively or finally, is but the exercise, under a power delegated by the Legislature, of a function pertaining to the fiscal affairs of the county. The power of taxation is legislative. [26 R. C. L., sec. 13.] So, therefore, the process of fixing the rate of taxation and making the levy for county pur-

poses is legislative in its nature. Accordingly, the Legislature has provided a complete scheme of taxation for the State and its political subdivisions. This may be found in Chapter 59 of the Revised Statutes. Under appropriate statutes, and amendments thereto, the county court has the delegated power to fix the rate of taxation, within certain limits, for county purposes and levy the taxes, and also the administrative power to appropriate and subdivide the revenue.

██ The respondent presents no substantial ground of complaint of the limitations that may be placed upon the number of his deputies, nor can he be heard to complain of the compensation allowed them. He has no vested right in his prospective expenditures of the year 1934, or in the number of his deputies. [Bair case, infra.] The deputy sheriffs, though county officers, are not constitutional officers, but only appointive. Their appointment is dependent upon the power vested in the Legislature to provide for their appointment, as specified in Section 14 of Article 9 of the Constitution which reads: ''The General Assembly shall provide for the election or appointment of such other county, township or municipal officers as public convenience may require.''

While salary or compensation is an incident to a public office, the power to fix the same is purely legislative in character and subject to legislative control. [State ex rel. v. Bair, 333 Mo. 1, 63 S. W. (2d) 64.] Until somewhat recently the office of county treasurer was an appointive office. In certain consolidated suits (State ex rel. Dietrich v. Daues, 315 Mo. 701, 287 S. W. 430), brought by an appointed county treasurer and involving the power of the county court to fix the amount of his salary, we said, at page 707: ''It requires no citation of authority to show that the power to prescribe a salary as an incident to a public office is purely legislative in character. That power as respects the office of county treasurer the Legislature has delegated to the county court, the agency most familiar with the fiscal affairs . . . of the county, as well as the services required to be performed by the treasurer—which may vary in different counties and at different times in the same county. The only limitation upon the power is that the compensation allowed thereunder be such as may be deemed just and reasonable. What is just and reasonable in a given case is committed to the discretion of the county court and to it only. Its action in the exercise of that discretion is not subject to judicial review, for the simple reason that neither the statute which confers the discretion nor any other makes it so.'' ██ We held that an appeal from the county court's order would not lie, and further held that a bill for injunction would lie on the ground, as charged, that said order was arbitrarily and fraudulently made.

From the considerations foregoing it follows that the questions raised upon the constitutionality of the county budget law are not,

on this record, for determination. The judgment below is void for want of jurisdiction. It is, therefore, reversed and the cause remanded with directions to the circuit court to enter judgment quashing the preliminary writ and hence discharging the appellants without day, and ordering that they recover of the respondent their costs in this cause laid out or expended. All concur.